# 21-1261-CR

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



UNITED STATES OF AMERICA,

*Appellee,*

*v.*

AUSTIN SUAREZ,

*Defendant-Appellant.*

---

*On Appeal from the United States District Court
for the Northern District of New York*

## BRIEF FOR DEFENDANT-APPELLANT

Stephanie M. Carvlin
LAW OFFICE OF STEPHANIE CARVLIN
*Attorney for Defendant-Appellant*
140 Broadway, Suite 4610
New York, New York 10005
917-549-0873

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**.......................................iii

**JURISDICTIONAL STATEMENT PURSUANT TO**
**FED R. APP. P. 28 (a)(2)**...................................1

**STATEMENT OF THE ISSUES**...................................1

**STATEMENT OF THE CASE**.....................................1

**PRELIMINARY STATEMENT**.....................................2

**STATEMENT OF FACTS**........................................3

    **The Charges, the Plea Agreement and the Rule 11**
    **Hearing**...............................................3

    **The PSR, the Parties' Sentencing Submissions and**
    **the Sentence Hearing**..................................5

**SUMMARY OF THE ARGUMENTS**..................................9

**ARGUMENT**.................................................11

**POINT ONE**

    **A VIOLATION OF NEW YORK PENAL LAW SECTION**
    **220.39(1) DOES NOT CONSTITUTE A CONTROLLED**
    **SUBSTANCE OFFENSE WITHIN THE MEANING OF THE**
    **CONTROLLED SUBSTANCES ACT, AND, AS A RESULT, SUCH**
    **A CONVICTION COULD NOT BE USED TO ENHANCE MR.**
    **SUAREZ'S OFFENSE LEVEL UNDER UNITED STATES**
    **SENTENCING GUIDELINES SECTION 2K2.1**..................11

    1. **The Inclusion of Naloxegol in the Definition of**
      **"Controlled Substance" Applicable to New York**
      **Penal Law Section 220.39(1) Renders that Statute**
      **Broader than the Federal Controlled Substance**
      **Act**..................................................11

    2. **The Inclusion of *All* Isomers of Cocaine in the**
      **Definition of "Controlled Substance" Applicable**
      **to New York Penal Law Section 220.39(1) Renders**
      **that Statute Broader than the Federal Controlled**
      **Substances Act**.......................................16

i

**POINT TWO**

    **BY FAILING TO OBJECT TO THE DISTRICT COURT'S INCORRECT CALCULATION OF MR. SUAREZ'S GUIDELINES RANGE, MR. SUAREZ'S ATTORNEY PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL, WHICH THIS COURT MAY ADDRESS IN THIS APPEAL**..............................21

    1. **Standard of Review - This Claim Can Be Resolved in this Appeal**....................................22

    2. **The Controlling Legal Standards**...................25

        a. **Counsel's Performance Fell Below an Objective Standard of Reasonableness**..........26

        b. **But for Trial Counsel's Deficiency, the Results of the Proceeding Would Have Been Different**....................................30

**CONCLUSION**............................................31

## TABLE OF AUTHORITIES

## Cases

*Massaro v. United States*,
    538 U.S. 500 (2003)................................22

*McCoy v. United States*,
    707 F.3d 184 (2d Cir. 2013).......................26

*McMann v. Richardson*,
    397 U.S. 759 (1970)...............................25

*Molina-Martinez v. United States*,
    578 U.S. 189 (2016)...............................30

*Raysor v. United States*,
    647 F.3d 491 (2d Cir. 2011).......................26

*Strickland v. Washington*,
    466 U.S. 668 (1984)...........................22, 26

*United States v. Booker*,
    543 U.S. 220 (2005)..........................29, n18

*United States v. Boyce*,
    2022 WL 2159890 (S.D.N.Y. June 15, 2022)..........20

*United States v. Fernandez-Taveras*,
    511 F.Supp.3d 367 (E.D.N.Y. 2021)..........18, 19, 20

*United States v. Gaskin*,
    364 F.3d 438 (2d Cir. 2004).......................22

*United States v. Gibson*,
    55 F.4th 153 (2d Cir. 2022)...................passim

*United States v. Gibson*,
    60 F.4th 720 (2d Cir. 2023).........2, 10, 12, 14, n10

*United States v. Goolsby*,
    820 F.App'x. 47 (2d Cir. 2020).................28, 29

*United States v. Gutierrez-Campos*,
    2022 WL 281582 (S.D.N.Y. Jan. 31, 2022).............20

iii

*United States v. Gutierrez-Campos*,
    22-438 (2d Cir. argument set for
    June 2, 2023).........................18, n13, 21, n15

*United States v. Guzman*,
    2022 WL 17068800 (S.D.N.Y. Nov. 17, 2022)...........20

United States v. Johnson,
    19-4071 (2d Cir. argument held
    October 21, 2021).............................18, n13

*United States v. Kimber*,
    777 F.3d 553 (2d Cir. 2015).......................23, 25

*United States v. Morris*,
    350 F.3d 32 (2d Cir. 2003).........................22

*United States v. Phifer*,
    909 F.3d at 372 (11th Cir. 2019)................17, n12

*United States v Shepardson*,
    196 F.3d 306 (1999)................................24

*United States v. Simmons*,
    21-3064(L)(2d Cir. argument set for
    June 2, 2023)................................18, n13

*United States v. Taveras*,
    2021 WL 1664107 (2d Cir. April 5, 2021).......18, n14

*United States v. Townsend*,
    897 F.3d 66 (2d Cir. 2018)..........2, 10, 11, 16, 27

## **Statutes**

8 U.S.C. §1326.......................................18

18 U.S.C. §2.......................................3, 9

18 U.S.C. §924(m)................................3, 8, 9

18 U.S.C. §3231.....................................1

18 U.S.C. §3742(a)..................................1

iv

28 U.S.C. §1291.............................................1

28 U.S.C. §2241.............................................4

28 U.S.C. §2255.............................................4

N.Y. Penal Law §110........................................12

N.Y. Penal Law. §220.00(7)............................12, 16

N.Y. Penal Law §220.18................................18, 19

N.Y. Penal Law §220.39(1).............................passim


**<u>United States Sentencing Guidelines</u>**

U.S.S.G. §1B1.3(1)(A)....................................6 n3

U.S.S.G. §2K2.1.........................................passim

U.S.S.G. §2K2.1, Commentary, Application Note 1..........16

U.S.S.G. §2K2.1, Commentary, Application Note 3.....24, n17

U.S.S.G. §2K2.1, Commentary, Application Note 14(B)...6, n3

U.S.S.G. §2K2.1(a)(4)(A)...............1, 2, 5, n2, 14, 15

U.S.S.G. §2K2.1(b)(1)(A)................................4, 6

U.S.S.G. §2K2.1(b)(4)(A).............................6, 7, 11

U.S.S.G. §2K2.1(b)(6)(B)..................................6

U.S.S.G. §3E1.1(a)......................................4, 6

U.S.S.G. §3E1.1(b)......................................4, 6

U.S.S.G. §4A1.1(c)......................................7, n4

U.S.S.G. §4A1.2(a)(4)...................................7, n4

U.S.S.G. §5G1.1(c).........................................7

## **Other Authority**

21 C.F.R. §1300.01(b).....................................17

21 C.F.R. 1308.12(b)(4)...............................17, n11

## JURISDICTIONAL STATEMENT PURSUANT TO
## FED. R. APP. P. 28 (a)(2)

This is an appeal from a final judgment of the United States District Court for the Northern District of New York entered on May 13, 2021. Appendix, "A" at 94. A timely notice of appeal was filed the same day. A103.

The District Court exercised jurisdiction in this case pursuant to 18 United States Code ("U.S.C.") §3231. This Court has jurisdiction over this appeal under 28 U.S.C. §1291 and 18 U.S.C. §3742(a).

## STATEMENT OF THE ISSUES

Whether the District Court erred in concluding that Mr. Suarez's prior conviction for violating New York Penal Law ("N.Y. Penal Law") §220.39(1) constituted a controlled substance offense within the meaning of United States Sentencing Guidelines Section ("U.S.S.G.") 2K2.1(a)(4)(A), thereby warranting a substantially higher Guideline level than would otherwise have been applicable.

Whether this Court should resolve this issue and find that trial counsel provided a level of representation that fell below that required by the Sixth Amendment to the United States Constitution.

## STATEMENT OF THE CASE

Austin Suarez appeals from a final judgment of conviction entered against him in the United States District

1

Court for the Northern District of New York (Honorable Thomas J. McAvoy). No decision or supporting opinion was reported.

## PRELIMINARY STATEMENT

Mr. Suarez pled guilty to aiding and abetting the theft of firearms from a federally licensed dealer. The District Court determined that Mr. Suarez's base offense level was 20 pursuant to United States Sentencing Guideline Section U.S.S.G. §2K2.1(a)(4)(A), which applies when a defendant has a prior conviction for either a crime of violence or a controlled substance offense. Mr. Suarez's prior conviction, which purportedly triggered this enhancement, was for violating N.Y. Penal Law §220.39(1). That conviction did not constitute a controlled substance offense. *United States v. Gibson*, 55 F.4th 153 (2d Cir. 2022); *United States v. Gibson*, 60 F.3d 720 (2d Cir. 2023); *See also United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018). The District Court's error almost doubled Mr. Suarez's Guideline sentencing range from 57 to 71 months to 110 to 120 months. Trial counsel's failure to recognize and object to this error constituted ineffective assistance of counsel, which this Court should address in this direct appeal.

**STATEMENT OF FACTS**

**The Charges, the Plea Agreement and the Rule 11 Hearing**

Mr. Suarez was indicted on June 6, 2020, for aiding and abetting the theft of firearms from a federally licensed dealer in violation of 18 U.S.C. §§924(m) and 2(a). A15-17. The government alleged that another individual, identified as Person A, stole five firearms from Zero Tolerance Manufacturing, a gun store in Ghent, New York. A13-14. Mr. Suarez allegedly drove Person A to the store and waited while he broke in and stole the firearms. Person A brought the guns back to the car, and he and Mr. Suarez drove away. A11-12.

Mr. Suarez entered into a written plea agreement with the government. He stipulated that he and his co-conspirator agreed to break into Zero Tolerance and steal guns. Mr. Suarez aided the offense by obtaining a pry bar and two-way radios that were used during the theft of the firearms. Additionally, he drove his co-conspirator to Zero Tolerance when the store was closed and dropped him off knowing that Person A would break in and steal firearms. A21. As the two had agreed prior to the commission of the offense, Person A used the pry bar provided by Mr. Suarez to break into the store. *Id.* Person A stole five firearms, returned to the car with the weapons, and he and Mr. Suarez drove off together. A22.

Mr. Suarez's plea agreement contained sentencing stipulations. The parties agreed that the offense involved five firearms, which triggered a two-level increase in the base offense level pursuant to U.S.S.G. §2K2.1(b)(1)(A). A22. The government agreed to recommend a two-level reduction under U.S.S.G. §3E1.1(a) and to move for an additional one-level reduction under U.S.S.G. §3E1.1(b) for acceptance of responsibility, provided that Mr. Suarez met specified preconditions. A22-23. The parties disagreed "as to the application of additional offense characteristics" and "agreed to address those and the base offense level prior to or at sentencing." A22.

Mr. Suarez's plea agreement contained an appellate-waiver provision through which he gave up "all rights, including those conferred by 18 U.S.C. §3742 and/or 28 U.S.C. §§2241 and 2255 to appeal and/or to collaterally attack" *inter alia* the conviction resulting from his plea "and any sentence to a term of imprisonment of 120 months or less." A23. During the Rule 11 hearing, the District Court read the waiver provision in the plea agreement to Mr. Suarez. A53. Mr. Suarez acknowledged that he "knew what he was doing when he agreed to give up those appeal rights[].] *Id*. He did so voluntarily.[1]

---

[1]Additionally, the District Court reviewed with Mr. Suarez the other rights he would be giving up by entering a plea of guilty. A43-44. The government provided a factual

4

*Id.* The Court also had defense counsel affirm that he had reviewed with Mr. Suarez the terms of the plea agreement under which he agreed to waive "those particular right to appeal." rights." A54-55. However, the plea agreement contained an exception to the waiver provision: Mr. Suarez retained the right "to raise a claim based on alleged ineffective assistance of counsel." A23.

### The PSR, the Parties' Sentencing Submissions and the Sentence Hearing

Section 2K2.1 of the United States Sentencing Guidelines governs offenses involving firearms. In the Presentence Investigation Report ("PSR"), United States Probation concluded that subsection (a)(4)(A)[2] provided the base-offense level for Mr. Suarez's offense. That subsection applies when a defendant committed any part of the instant offense after sustaining one felony conviction for either a crime of violence or a controlled substance offense.

_____

basis for the plea, and Mr. Suarez acknowledged that he committed the specified conduct. A49-51. The government stated the maximum penalties Mr. Suarez faced, including fine, forfeiture and terms of imprisonment and supervised release and outlined its view of the relevant Guidelines calculation. A51-52, A56-57.

[2]Section 2K2.1(a)(4) provides as follows:
(a) Base Offense Level (Apply the Greatest):
    (4) **20,** if —(A) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense[.]

Probation concluded that Mr. Suarez's 2015 New York conviction for Criminal Sale of a Controlled Substance in the Third Degree in violation of N.Y. Penal Law §220.39(1) qualified as a controlled substance offense, and, therefore, Mr. Suarez's base offense level was 20. PSR at ¶19.

Probation applied several Specific Offense Characteristics: a two-level enhancement under U.S.S.G. §2K2.1(b)(1)(A) because the offense involved at least three but not more than seven firearms; the two-level enhancement in U.S.S.G. §2K2.1(b)(4)(A) because the firearms were stolen; and a four-level enhancement pursuant to U.S.S.G. §2K2.1(b)(6)(B) because "the defendant" possessed the firearms in connection with another offense.[3] These enhancements when applied to the base yielded an adjusted offense level of 28. PSR at ¶26. Probation suggested that a three-level reduction for acceptance of responsibility under U.S.S.G. §3E1.1(a) and (b) was appropriate, which resulted in a total offense level of 25. PSR at ¶29.

---

[3]In deciding that this Specific Offense Characteristic should be applied, Probation relied on Application Note 14(B) to §2K2.1, which states that the enhancement applies in a case "in which a defendant ... during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary[.]" PSR at ¶22. While Mr. Suarez – "the defendant" - did not himself take the firearms he was convicted of aiding and abetting his co-conspirator's theft of the weapon, and, Probation found, he was responsible for that conduct under U.S.S.G. §1B1.3(1)(A).

Probation determined that Mr. Suarez's Criminal History Category ("CHC") was V based on ten CHC points.[4] PSR at ¶45. A total offense level of 25 at CHC V corresponds to a Guidelines range of 100 to 125 months. However, since the statutory maximum for the offense of conviction was 120 months, Mr. Suarez's Guidelines range was 100 to 120 months pursuant to U.S.S.G. §5G1.1(c).

In its sentencing submission, the government urged the District Court to apply a sentence within the applicable Guidelines range. A66.

While Mr. Suarez's plea agreement did not contain a stipulation as to the base offense level, and in fact stated that counsel would address "the base offense level" and the application of Specific Offense Characteristics "prior to or at sentencing,"[5] Mr. Suarez's counsel did not challenge the base offense level. Rather, in his written sentence submission, counsel contested only the assessment of two points pursuant to U.S.S.G §2K2.1(b)(4)(A), which applies when the firearms are stolen. Counsel noted that the offense

---

[4]Probation initially set Mr. Suarez's CHC at IV. However, Probation ultimately accepted the government's assertion that Mr. Suarez had pled guilty to one of the charges listed as "open" on the draft PSR. This led to the assignment of 1 additional CHC point pursuant to U.S.S.G. §§4A1.1(c) and 4A1.2(a)(4), which increased Mr. Suarez's CHC points to 10 and his category to V. PSR at page 31 (Second Addendum).
[5]A22.

Mr. Suarez pled guilty to violating – 18 U.S.C. §924(m) – requires that a firearm be stolen. A71. Thus, the base offense level already encompassed this conduct. To add two additional levels for stolen firearms based on the same fact would violate Mr. Suarez's constitutional protection again double jeopardy. Counsel argued that the correct Guidelines range was 23. *Id.*

Defense counsel also argued that Mr. Suarez's background warranted imposing a non-Guideline sentence. His father suffered from paranoid schizophrenia and drug addiction. Mr. Suarez himself became addicted to opiates for approximately one year in his early teens following a hand injury. When Mr. Suarez's doctor refused to continue to prescribe the drugs, "Mr. Suarez resorted to obtaining them from street dealers, and eventually, began using heroin." A72. He was receiving suboxone while incarcerated in an attempt to treat his addiction. *Id.* Mr. Suarez had two children with whom he maintained regular contact. *Id.* Counsel asked that the District Court impose a sentence within the range of 70 to 87 months. A70.

At sentencing, the District Court asked counsel if there was anything in the PSR that the Court should "take special notice of?" A79. Counsel stated he had no issues with respect to the report, other "a few" that Probation had addressed in

the Revised PSR.[6] Without objection from defense counsel, the District Court adopted the factual information in the PSR and agreed with Probation's Guidelines calculation. A80, A88. The District Court stated that it had reviewed all pertinent factors, including the parties' submissions and the PSR and had concluded that a sentence within the Guidelines range of 100 to 120 months was sufficient but not greater than necessary to meet the requirements of 18 U.S.C. §3553(a). A88. The Court imposed a term of incarceration of 100 months to be followed by a three-year term of supervised release. A89. This timely appeal followed.

## SUMMARY OF THE ARGUMENTS

### POINT ONE

United States Sentencing Guidelines Section 2K2.1 contains the rules for calculating a defendant's offense level for the crime of which Mr. Suarez was convicted: aiding and abetting the theft of a firearm from a licensed dealer in violation of 18 U.S.C. §§924(m) and 2(a). The base offense level for firearms offenses that fall within §2K2.1 is enhanced when a defendant has "committed any part of the instant offense subsequent to sustaining one felony

---

[6]Defense counsel had provided clarifying information regarding the address of a specific location and that the "informant" admitted to being the driver of the car involved in a prior offense. PSR at 29.

9

conviction of either a crime of violence or a controlled substance offense[.]" U.S.S.G. ¶2K1.1(a)(4)(A).

United States Probation determined that Mr. Suarez's conviction for violating N.Y. Penal Law §220.39(1) constituted a controlled substance offense and, therefore, set his base offense level at 20. PSR at ¶19. The District Court agreed. A80. This was error. New York Penal Law §220.39(1) criminalizes conduct that is not prohibited by the Federal Controlled Substance Act ("CSA").[7] As a result, Mr. Suarez's state conviction should not have been used to enhance his base offense level. *United States v. Gibson*, 55 F.4th at 166; *United States v. Gibson*, 60 F.4th 723; *United States v. Townsend*, 897 F.3d at 68.

## POINT TWO

Trial counsel's failure to object to the incorrect Guidelines range, which was six levels higher than it should have been, constituted ineffective assistance of counsel. This Court has the authority to and should address this issue in this direct appeal.

---

[7]Codified at Title 21 of the United States Code.

**ARGUMENT**

**POINT ONE**

**A VIOLATION OF NEW YORK PENAL LAW SECTION 220.39(1) DOES NOT CONSTITUTE A CONTROLLED SUBSTANCE OFFENSE WITHIN THE MEANING OF THE CONTROLLED SUBSTANCES ACT, AND, AS A RESULT, SUCH A CONVICTION COULD NOT BE USED TO ENHANCE MR. SUAREZ'S OFFENSE LEVEL UNDER UNITED STATES SENTENCING GUIDELINES SECTION 2K2.1**

The District Court found that Mr. Suarez's conviction for violating N.Y. Penal Law §220.39(1) constituted a conviction for a controlled substance offense. As a result, the Court determined that U.S.S.G. §2K2.1(b)(4)(A), which applies, *inter alia*, when a defendant has a prior conviction for a controlled substance offense, provided the appropriate base offense level. As this Court held in *United States v. Gibson*, 55 F.4th at 155, N.Y. Penal Law §220.39(1) sweeps more broadly than the CSA, and, as a result, a conviction for violating that statute does not constitute a conviction for a controlled substance offense. The District Court's determination to the contrary in this case rendered Mr. Suarez's sentence procedurally unreasonable.

1. **The Inclusion of Naloxegol in the Definition of "Controlled Substance" Applicable to New York Penal Law Section 220.39(1) Renders the Statute Broader than the Federal Controlled Substances Act**

In *United States v. Townsend*, 897 F.3d at 68, this Court held that the term "controlled substance" in U.S.S.G. §4B1.2(b) refers exclusively to substances listed under the

11

federal CSA. In *United States v. Gibson*, 55 F.4th at 159-60, this Court held that N.Y. Penal Law §220.39(1)[8] defines "narcotic drug" more broadly than the CSA because the state definition of narcotic drug includes a drug, naloxegol, that is not listed in the relevant federal schedules. *See also United States v. Gibson*, 60 F.3d at 723. (granting rehearing and denying the government's request for an amended opinion).

*Gibson* presented an appeal by the government. The District Court had determined that Mr. Gibson's prior conviction for attempted criminal sale of a controlled substance in violation N.Y. Penal Law §220.39(1) and §110 did not constitute a controlled substance offense that could be used enhance Mr. Gibson's sentence on his federal conviction. The New York statute at issue in *Gibson*, and in this case, prohibits knowingly and unlawfully selling (attempting to sell) a "narcotic drug". The definition of "narcotic drug" that applies to prosecutions under §220.39(1) is contained in N.Y. Penal Law §220.00(7). That statute defines narcotic drug to mean "any controlled substances listed in schedule I(b), I(c), II(b) or II(c) [of New York Public Health Law §3306] other than methadone." The District Court in *Gibson* found that the definition of narcotic drug under the applicable New

---

[8]New York Penal Law Section 220.39(1) prohibits knowingly and unlawfully selling a "narcotic drug."

York Schedule was broader than the corresponding federal schedule. In 2015, naloxegol, an opium derivative, had been removed from the federal schedule but remained on the New York schedule. *See Gibson*, 55 F.3d at 156-58.

The government did not dispute in the District Court that as of 2015 the New York statute, §220.39(1), covered conduct that was not prohibited under the CSA. Instead the government argued that the District Court should compare the federal and state schedules as they existed at the time Mr. Gibson was convicted of the state offense. The District Court rejected that argument, finding that the relevant point of comparison was the date Mr. Gibson was sentenced on his federal charge. At that time, the applicable New York schedule was broader than the corresponding federal schedule, and, as a result, Mr. Gibson's prior conviction was not a controlled substance offense that could be used to find that he was a career offender as defined by U.S.S.G. §4B1.1(a).[9] *See Gibson*, 55 F.3d at 156-58.

---

[9]Guideline Section 4B1.1(a) provides as follows: A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

The government repeated the time-of-conviction argument it made in the District Court on appeal. It urged this Court to hold that a District Court must compare the two schedules as they were written when the defendant was convicted of the purportedly qualifying prior offense. The government also sought "to suggest that that the existence of disparate schedules is an unresolved issue that would be an impediment to affirmance." *Gibson*, 55 F.3d at 160.

With respect to the government's attempt to assert that the District Court had not resolved the question of whether §220.39(1) prohibits conduct that is not prohibited by the CSA, this Court was unpersuaded.[10] This Court concluded that the "issue raised by Gibson's central contention - that the state and federal schedules diverged - did not remain

---

[10]The government sought panel rehearing on this question and urged the panel to issue an amended opinion. The government argued, in essence, that what it characterized as this Court's "finding" regarding the disparity between the federal and state statutes should "bind the parties *in this case*, but should not carry precedential weight in any other cases." *United States v. Gibson*, 20-3049, docket entry 108-1 at 4, Government's Petition for Panel Rehearing (emphasis in original). This Court wholly rejected the government's interpretation of its decision in *Gibson*: "Plainly, the comparability of the [sic] New York's 2002 drug schedules and the current federal drug schedules was an issue that the district court was required to, and did, decide in order to make a determination as to what Gibson's Guidelines sentence would be. This Court was required to, and did, determine whether the district court's decision was correct." *United States v. Gibson*, 60 F.4th at 723. This Court denied the government's request for an amended opinion.

unresolved by the government's refusal to address it. *Gibson*, 55 F.3d at 160.

This Court also rejected the government's argument that in comparing the state and federal schedules, the District Court should have looked at the version of the CSA schedules in effect of the time Gibson was convicted of the prior crime. *Id.* at 165. However, this Court left unanswered the question whether in determining if "the state law applicable to the defendant's prior controlled substance conviction is broader than federal law, the version of the CSA on which the district court should focus is the version in effect on the date of the defendant's sentence for his current offense rather than on the date on which he committed his current offense." *Id*. Because the federal "controlled substances schedules were narrower than state law at both times" in Gibson's case, this Court did not need to resolve that issue. *Id.* at 166.

This disparity between the relevant New York State and federal schedules identified in *Gibson* existed both at the time Mr. Suarez committed his federal offense in 2020 and the time he was sentenced for it in 2021. *See Gibson*, 55 F.4th at 166. As a result, it is beyond dispute that Mr. Suarez's conviction for violating N.Y. Penal Law §220.39(1) could not be used as a basis for enhancing his sentence under U.S.S.G. §2K2.1(a)(4)(A), which incorporates §4B1.2's definition of

15

"controlled substance offense." U.S.S.G. §2K2.1, Commentary, Application Note 1. *See also Townsend*, 897 F.3d at 68. The District Court plainly erred by calculating Mr. Suarez's Guidelines base offense level.

2. <u>**The Inclusion of *All* Isomers of Cocaine in the Definition of "Controlled Substance" Applicable to New York Penal Law Section 220.39(1) Renders that Statute Broader than the Federal Controlled Substances Act**</u>

The relevant New York State schedule of controlled substances was broader than the corresponding federal controlled substance schedule at the time of Mr. Suarez's sentence on this case in an additional respect. "Narcotic Drug" is defined as "any controlled substances listed in schedule I(b), I(c), II(b) or II(c) [of New York Public Health Law §3306] other than methadone." N.Y. Penal Law §220.00(7). At the time Mr. Suarez committed the instant offense and when he was sentenced for it Schedule II(b)(4) included cocaine, defined as follows:

> 4) Coca leaves and any salt, compound, derivative or preparation of coca leaves, any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, including cocaine and ecgonine, their salts, *isomers*, and salts of isomers, except that the substances shall not include: (A) decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or (B){1231} ioflupane.

(emphasis added).

The definition of cocaine under the CSA is similar, but not identical.[11] While both the federal and state Schedules include "isomers" of cocaine, the New York definition of isomer[12] is broader, and has been broader since 1978. Schedule II of the CSA defines cocaine to include, *inter alia*, coca leaves, salts, compounds, derivatives or preparations of coca leaves and ecgonine and their salts and isomers. 21 C.F.R. §1308.12(b)(4). However, under 21 C.F.R. §1300.01(b), the federal definition of "isomer" is limited to optical or geometric isomers. In contract, New York's definition includes all isomers, including positional and constitutional isomers in addition to optical or geometric isomers. These types of isomers are distinct. *See United States v. Phifer*, 909 F.3d at 372, 377, n.5 (11th Cir. 2019)("optical" and "geometric" isomers, which require specific arrangements of

---

[11]Schedule II provided as follows at the time of Mr. Suarez's sentencing on this case: "Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include (i) decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or (ii) [123I] ioflupane; 21 C.F.R. 1308.12(b)(4) (2021 version).

[12]Isomers are "molecules that share the same chemical formula but have their atoms connected differently, or arranged differently in space." *United States v. Phifer*, 909 F.3d 372, 376 (11th Cir. 2018)(citation omitted).

molecules in space, are different from "positional" or "constitutional" isomers, which do not"); *see also* 21 C.F.R. §1308.12(b)(including optical, positional or geometric isomers with respect to the CSA definition of some listed substances). Thus, a violation of N.Y. Penal Law §220.39(1) is not categorically a federal controlled substances offense for this reason as well.[13]

The District Court in *United States v. Fernandez-Taveras*, 511 F.Supp.3d 367 (E.D.N.Y. 2021),[14] reached this conclusion. Fernandez-Taveras was indicted for illegally reentering the United States in violation of 8 U.S.C. §1326. He moved to dismiss the indictment, arguing that his prior removal from the United States was invalid because his conviction for criminal sale of a controlled substance in the second degree in violation of N.Y. Penal Law §220.18, which was the basis for his deportation, did not constitute an offense "relating to a controlled substance" as defined in the CSA.

---

[13]This issue is pending before this Court in *United States v. Johnson*, No. 19-4071 (2d Cir. argument held October 21, 2021); *United States v. Simmons*, 21-3064(L)(2d Cir. argument set for June 2, 2023); *United States v. Gutierrez-Campos*, 22-438 (2d Cir. argument set for May 25, 2023).

[14]The government's appeal in *Fernandez-Taveras* was withdrawn *sub nom. United States v. Taveras*, No. 21-155, 2021 WL 1664107 (2d Cir. April 5, 2021).

Based on a review of legislative history, the District Court found that New York deliberately adopted the broadest possible definition of cocaine. In 1978, the New York State legislature amended the definition to include all isomers. "According to the Sponsor's Memorandum in support of the bill, the question of whether [dextro isomer cocaine and levo isomer cocaine] are chemically equivalent [was] the source of present controversy[.]" *Fernandez-Taveras*, 551 F.Supp.3d at 373 (cleaned up). The New York Legislature's goal was to "close the statutory loophole" by including "all isomers of cocaine and ecgonine in the schedule of controlled substances." *Id*. The District Court accepted Mr. Fernandez-Taveras' argument that his prior conviction under N.Y. Penal Law §220.18 was not a controlled substance offense: "The New York statute applies on its face to cocaine isomers to which the CSA does not." *Id*. at 374.

In reaching this conclusion, the District Court also relied on *People v. Burnett*, 245 A.D.2d 460 (2d Dep't 1997). In that case, the Second Department of the Appellate Division of New York State Supreme Court rejected a defendant's challenge to the sufficiency of the proof that the substance he sold was cocaine. The Appellate Division found that because a "controlled substance under Schedule II of Public Health Law §3306 includes cocaine and all of its isomers" the

19

forensic chemist's testimony that cocaine was present in the substance tested was sufficient. *Burnett*, 245 A.D. 2d at 460. "There was no need for additional testing to ascertain whether the substance was L-cocaine or D-cocaine." *Id*. Thus, the New York State definition of cocaine was broader than the corresponding federal definition. *Fernandez-Taveras*, 551 F.Supp.3d at 373.

Many other District Courts that have considered this issue have agreed with the Fernandez-Taveras analysis. *See United States v. Boyce*, 21-cr-777 (LJL), at *6, 2022 WL 2159890, (S.D.N.Y. June 15, 2022) ("The Court thus joins the growing list of courts in this Circuit that have held that there is no categorical match between a controlled substance under federal law and a narcotic drug under New York Penal Law"). *United States v. Guzman*, 19-cr-435 (GHW), 2022 WL 17068800, at *5 (S.D.N.Y. Nov. 17, 2022)(New York statute criminalizes isomers of cocaine that the Controlled Substances Act does not); *United States v. Gutierrez-Campos*, 21 Cr. 40 (JPC), 2022 WL 281582, at *14 (S.D.N.Y. Jan. 31, 2022)("plain textual reading of the relevant federal regulations compels the conclusion that New York's definition of cocaine, without limitation to particular types of

isomers, is categorically broader than the federal definition.)"[15]

As the District Court found in *Fernandez-Taveras*, the definition of cocaine that is applicable to article 220 of the New York Penal Law is broader than the federal definition of cocaine. This was the case in 2020 when Mr. Suarez committed the conduct that gave rise to his federal prosecution and in 2021 when he was sentenced. Thus, Mr. Suarez's conviction under N.Y. Penal Law §220.39(1), could not have been used to enhance his sentence under U.S.S.G. §2K2.1.[16]

## POINT TWO

### BY FAILING TO OBJECT TO THE DISTRICT COURT'S INCORRECT CALCULATION OF MR. SUAREZ'S GUIDELINES RANGE, MR. SUAREZ'S ATTORNEY PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL, WHICH THIS COURT MAY ADDRESS IN THIS APPEAL.

Trial counsel failed to make an argument that was obvious at the time of Mr. Suarez's plea and sentencing in 2021: that his prior conviction under New York Penal Law §220.39(1) did not constitute a controlled substance offense within the meaning of the United States Sentencing Guidelines. As a

---

[15]The government has appealed. *United States v. Gutierrez-Campos*, 22-438 (oral argument set for May 25, 2023).

[16]*United States v. Fernandez-Taveras*, 511 F.Supp.3d 367 (E.D.N.Y. 2021), was decided on January 7, 2021, four months before Mr. Suarez was sentenced in this case.

result, Mr. Suarez was sentenced under a Guidelines range that was almost double what his actual range should have been. The record demonstrates that counsel's actions were not done for strategic reasons. His failure to raise a compelling issue was the result of inadvertence not intention. Counsel provided ineffective assistance within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984).

**1.   Standard of Review - This Argument Can Be Resolved in this Appeal**

When an appellant makes a claim of ineffective assistance of counsel on direct appeal, this Court may either: (1) decline to hear the claim, forcing the appellant to raise the issue by writ of habeas corpus in the District Court; (2) remand to the District Court to develop the record; or (3) decide the issue on the record before this Court. *United States v. Morris*, 350 F.3d 32, 39 (2d Cir. 2003). Federal appellate courts usually follow the first path. *United States v. Gaskin*, 364 F.3d 438, 467 (2d Cir. 2004) (this Court is generally disinclined to resolve ineffective assistance claims on direct review). The rationale for this restrain arises from the fact that the District Court is the better forum for developing the factual record that may be necessary to adjudicate claims that trial counsel performed ineffectively. *See Massaro v. United States*, 538 U.S. 500, 505 (2003). However, when resolution of an ineffective

assistance of counsel argument is "beyond doubt" or when determining the question on direct appeal "would be in the interest of justice", this Court has found it appropriate to decide the issue. *United States v. Kimber*, 777 F.3d 562, 562 (2d Cir. 2015).

The claim of ineffective assistance of counsel in this case falls within these categories and may be resolved by this Court. First, to determine whether trial counsel provided ineffective assistance turns on an issue that requires no facts beyond those in the record before this Court. The case presents solely a legal issue: Given the state of the law at the time of Mr. Suarez's plea and sentencing, should counsel have argued that Mr. Suarez's prior conviction under N.Y. Penal Law §220.39(1) was not a conviction for a controlled substance offense? Resolution of this issue is beyond doubt in light of *Gibson*.

Second, Counsel's failure to contest the applicability of Mr. Suarez's prior conviction under N.Y. Penal Law §220.39(1) patently was not a strategic choice. The record *shows* that counsel's failure to contest this issue was the result of inadvertence. The government did not insist that Mr. Suarez stipulate that his prior New York conviction should count as a controlled substance offense. On the contrary. Mr. Suarez's written plea agreement allowed his counsel to argue

23

that 20 was not the appropriate level (the "parties disagree as to the application of additional offense characteristics and agree to address those and the base offense level prior to or at sentencing.") A22. Counsel never made the permitted challenge. Instead, he argued that Mr. Suarez was "potentially" being punished twice because he was convicted of theft of a firearm and was also receiving a two-level enhancement because the offense involved a stolen firearm. A71. This Court had rejected that argument in 1999. *United States v Shepardson*, 196 F.3d 306, 314 (1999).

Finally, in this case the interest of justice weighs in favor of reviewing this claim now rather than forcing Mr. Suarez to return to the District Court and pursue the issue, likely *pro se*, through a likely lengthy process. The record is developed. The legal issue is clear. The prejudice to Mr. Suarez is self-evident. Absent the finding that he had a prior conviction for a qualifying controlled substance offense, Mr. Suarez's base offense would have been 14,[17] 6 levels lower than the 20 that Probation and the District Court applied. If

---

[17]Level 14 is the base offense level that is applied to a defendant who was a "prohibited person" at the time he committed the offense. U.S.S.G. ¶2K2.1(a)(6). The applicable definition of "prohibited person" includes any person described in 18 U.S.C. 922(g), which makes it unlawful, *inter alia,* for anyone who has been convicted of crime punishable by imprisonment for a term exceeding one year to possess a firearm. U.S.S.G. §2K2.1, Application Note 3, cross-referencing 18 U.S.C. 922(g).

the other adjustments the Court found appropriate were applied (plus 8 for Specific Offense Characteristics and minus 3 for acceptance of responsibility), Mr. Suarez's total offense level would have been 19, which at CHC V yields a sentencing range of 57 to 71 months.

A "decision" to accept a Guidelines range – 100 to 120 months - almost double what it should have been is no decision at all. Given these circumstances, this Court should resolve this claim in this direct appeal. *See Kimber*, 777 F.3d at 562 (review by this Court of an assertion that trial counsel had provided deficient representation was appropriate because the claim depended entirely on a legal question).

## 2. **The Controlling Legal Standards**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Cons. Amend. VI. This provision of the Constitution guarantees more than the mere presence of an attorney during the critical stages of a criminal prosecution. Rather, it "has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

Claims of ineffective assistance of counsel are reviewed under the two-prong test the United States Supreme Court

adopted in *Strickland v. Washington*: did counsel's representation fall below an objective standard of reasonableness, and if it did, is there a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. 466 U.S. at 688, 694. This Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011)(cleaned up).

### a. Counsel's Performance Fell Below an Objective Standard of Reasonableness

Trial counsel's failure to argue that Mr. Suarez's prior New York conviction under N.Y. Penal Law §220.39(1) was not a controlled substance offense as defined in the United States Sentencing Guidelines was objectively unreasonable. Of course defense counsel cannot be expected to (and is not required to) anticipate every development in the law. *McCoy v. United States*, 707 F.3d 184, 188 (2d Cir. 2013)(an attorney is not "required to forecast changes or advances in the law in order to provide effective assistance."). However, defense counsel in this case would not have had to be prophetic to have realized in January of 2021, when Mr. Suarez took his plea, and in May of 2021, when Mr. Suarez was sentenced, that the New York Schedule of controlled substances under which "narcotic drug" is defined was subject to attack.

26

This Court did not issue its original decision in *Gibson* until December 6, 2022. However, the District Court in *Gibson* made its finding that §220.39(1) was overbroad on January 31, 2020, a year before Mr. Suarez's 2021 plea. *United States v. Gibson*, 20-3049, Joint Appendix on Appeal, Document 28 at GA180, GA189.

Several years before that, in 2018, this Court decided *United States v. Townsend*, 897 F.3d at 68. In *Townsend*, the Court held that the term "controlled substance" in the Guidelines refers exclusively to substances scheduled under the CSA. *Id*. Thus, at least by July 23, 2018, the date the *Townsend* decision was issued, defense counsel in this Circuit knew they should be comparing the CSA schedules with the relevant state law schedules to determine whether a state drug conviction "qualified" a defendant for a sentencing enhancement under the Guidelines. In fact, Gibson's trial counsel based their attack on Mr. Gibson's prior conviction under N.Y. Penal Law §220.39(1) – the statute at issue in this case – on *Townsend*. In the District Court, and initially in this Court, the government in *Gibson* did not even dispute that the statute was overbroad. *Gibson*, 55 F.4th at 159.

The need to compare state priors with Guidelines definitions was clear even before *Townsend*. In its 2017 decision in *Harbin v. Session*, 860 F3d 57 (2d Cir. 2017), the

question before this Court was whether a conviction under N.Y. Penal Law §220.31, which prohibits knowingly and unlawfully selling a "controlled substance", constituted an aggravated felony under the Immigration and Nationality Act. To resolve that issue, this Court needed to determine whether the relevant New York drug Schedule included controlled substances that were not listed on the federal Schedule. This Court found that the applicable New York Schedule was overbroad. New York Penal Law §220.31 could punish conduct that was not criminal under the CSA. As a result, Mr. Harbin's prior conviction did not constitute an aggravated felony.

In 2019, this Court vacated an appellant's enhanced sentence under U.S.S.G. 2K2.1 based on a *Townsend* challenge. *United States v. Santos*, 748 F.App'x 428 (2d Cir. 2019). Santos argued on appeal that his prior New York convictions for criminal possession of a controlled substance could not serve as predicate offenses under §2K2.1 in light of this Court's decision in *Townsend*. The government agreed, and this Court ordered that Santos be resentenced.

The government made the same concession in *United States v. Goolsby*, 820 F.App'x 47 (2d Cir. 2020). Following trial, Goolsby was convicted of controlled-substance and firearms offenses. The District Court relied on Goolsby's prior conviction under New York Penal Law §220.06(1) to find that

he was a career offender. On appeal, the government conceded that at the time of Goolsby's conviction, the relevant New York state drug schedule "included drugs not covered by the Controlled Substance Act[.]" *Goolsby*, 820 F.App'x at 50. This Court remanded for resentencing.

While none of these cases decided the exact question at issue in *Gibson* – whether the New York definition of "narcotic drug" is broader than the corresponding federal definition - all of these cases put counsel on notice that this was an issue. In fact, it is fair to say that between 2018 when *Townsend* was decided and the end of 2022, when this Court decided *Gibson,* no legal issue since *Booker*[18] generated as much attention in the defense bar in this Circuit. To find in these circumstances that defense counsel provided ineffective assistance by failing to at least argue that Mr. Suarez's prior conviction did not constitute a controlled substance offense would not impose a requirement that counsel be prescient, just competent. In contrast, not finding that counsel's performance was deficient would countenance a degree of inattention to a developing area in federal criminal practice that falls below the standard set by the Sixth Amendment.

---

[18] *United States v. Booker*, 543 U.S. 220 (2005).

**b. <u>But for Trial Counsel's Deficiency, the Result of the Proceeding Would Have Been Different</u>**

Probation's calculation of Mr. Suarez's Guidelines range was driven largely by its determination that his base offense level was 20 because of his prior conviction under N.Y. Penal Law §220.39(1). PSR at ¶19. The District Court adopted Probation's Guidelines calculation. A80. Absent the finding that Mr. Suarez had a prior conviction for a controlled substance offense, his total offense level would have been 19,[19] which at CHC V yields a sentencing range of 57 to 71 months. But for the District Court's substantial error in calculating Mr. Suarez's Guidelines range, and counsel's failure to address the issue, the result of the proceeding would have been different. *See Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016)(in the context of determining whether plain error occurred, finding that "in most cases a defendant who has shown that the district court mistaken deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome.").

---

[19]This calculation is derived by starting with a base offense of 14, adding 8 levels for the specific offense characteristics that were applied and subtracting 3 levels for acceptance of responsibility.

## CONCLUSION

For all the reasons stated herein, Mr. Suarez's sentence must be vacated and the case remanded to the District Court for resentencing.


New York, New York
April 17, 2023


_____/s/_____
STEPHANIE M. CARVLIN
*Attorney for Defendant-Appellant*
*Austin Suarez*
140 Broadway, Suite 4610
New York, New York  10005
917-549-0873

## Certificate of Compliance with Rule 32(a)

1.    This 6663-word brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in plain, Roman style, with a monospaced typeface of 10.5 characters per inch (Courier New), using Word for Mac version 16.40.


_____/s/_____
Stephanie M. Carvlin
Attorney for Appellant Austin Suarez
Dated: April 17, 2023